UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIGUEL CHIGUIL CHIGUIL (A-242-441-617),

               Petitioner,

     v.

KRISTI NOEM, et al.,

               Respondents.

No. 1:26-cv-1844 DAD CSK

FINDINGS AND RECOMMENDATIONS

Petitioner Miguel Chiguil Chiguil (A-242-441-617), a native and citizen of Guatemala, who is proceeding through counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner entered the United States in March 2014.  On or about October 2025, petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials and has been in continuous detention since October 2025.  This habeas action concerns petitioner's October 2025 detention.  For the reasons that follow, the Court recommends granting the petition for writ of habeas corpus.

///

///

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.    FACTUAL BACKGROUND[2]

Petitioner is a native/citizen of Guatemala.  (ECF No. 3 at 5.)  Petitioner entered the United States without inspection in March 2014.  (Id. at 7.)  Petitioner was "apprehended already in the United States, released on his own recognizance, and later re-apprehended when he was complying with mandatory inspection appointments."  (ECF No. 1 at 18; see also id. at 23; ECF No. 11 at 2 ("Petitioner's prior release in the discretion of DHS…").)  In either September 2025 or October 2025, petitioner was arrested by ICE officers and re-detained.  (See ECF No. 1 at 7; ECF No. 11 at 2.)  On October 7, 2025, an immigration judge denied petitioner bond for lack of jurisdiction pursuant to In re Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).  (ECF No. 3 at 1.)  On October 23, 2025, petitioner was issued a Notice to Appear in standard removal proceedings pursuant to Immigration and Nationality Act ("INA") Section 240 (8 U.S.C. § 1229a).[3]  (Id. at 5.)  In addition, the Notice to Appear does not allege petitioner is an "arriving alien," though the Notice does include a place to designate this information.  (Id.)  The Notice to Appear charged petitioner with violating INA section 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) as a noncitizen who entered the United States without being admitted or

---

[2]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 32.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  The record before the Court includes various discrepancies.  First, respondents assert that petitioner entered the United States in March 2024 (ECF No. 11 at 2), while petitioner alleges that he entered the United States in March 2014 (ECF No. 1 at 7), which is supported by the government's Notice to Appear that identifies petitioner's entry as March 1, 2014 (ECF No. 3 at 5).  Because the Court treats the verified petition as an affidavit and the petition's allegations are supported by the Notice to Appear, the Court finds that petitioner entered the United States in March 2014.  Second, respondents assert that petitioner was arrested for driving a motor vehicle without a license in September 2025 (ECF No. 11 at 2), and petitioner alleges that he has no criminal history (ECF No. 1 at 7).  The Court need not resolve this factual dispute where the government does not assert that petitioner is detained under 8 U.S.C. § 1226(c) on the basis of his criminal history.  Third, the record includes references to petitioner's detention in both October 2025 and September 2025.  (See ECF No. 1 at 7 (detained in "October, 2026 [sic]," typographical error construed to be "October, 2025"); ECF No. 3 at 1 (immigration judge order dated October 7, 2025), 5 (Notice to Appear dated October 23, 2025); ECF No. 11 at 2 (detained on September 9, 2025).)  This factual discrepancy need not be resolved as it does not affect the Court's analysis.

[3]   Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.  (Id.)  On January 9, 2026, an immigration judge again denied petitioner bond for lack of jurisdiction pursuant to In re Matter of Yajure Hurtado.  (Id. at 3.)

## II.    PROCEDURAL BACKGROUND

On March 6, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On March 10, 2026, this Court ordered respondents to file a response to the petition within seven days.  (ECF No. 6.)  After respondents failed to file a response to the petition within seven days, on March 18, 2026 this Court granted respondents until 5:00 p.m. on March 18, 2026 to file a response.  (ECF No. 7.)  This Court ordered that respondents' failure to file a response would be interpreted as a non-opposition to granting the petition.  (Id.)  Respondents did not file a response to the petition by 5:00 p.m. March 18, 2026.  See Docket.  On March 24, 2026, petitioner requested entry of default.  (ECF No. 8.)  On March 25, 2026, apparently in response to the petitioner's request for entry of default, respondents filed a motion for an extension of time to file a response to the petition after realizing they had failed to respond to the petition and failed to comply with the Court's orders.  (ECF No. 9.)  The Court granted in part respondents' request for an extension and respondents filed their response on March 27, 2026.  (ECF Nos. 10, 11.)  Petitioner filed an opposition on April 2, 2026.  (ECF No. 12.)  Briefing is now closed.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533

3

U.S. 678, 687 (2001).

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his continued detention based on the violation of the following: (1) 8 U.S.C. § 1226(a); (2) the Administrative Procedure Act ("APA"); and (3) the Fifth Amendment Due Process Clause.  (ECF No. 1 at 22-30.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (ECF No. 11 at 1-2.)  Respondents cite Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b)(2)(A) is applicable here.  (Id. at 1.)  Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id. at 2.)  In the alternative, respondents request that the Court stay this matter pending resolution of Rodriguez v. Bostock, No. 25-6842 (9th Cir.).  (Id.)

### A.    Statutory Claim (Claim One)

Petitioner argues that he is detained pursuant to 8 U.S.C. § 1226(a) rather than 8 U.S.C. § 1225(b), as found by the immigration judges who ruled that they lacked jurisdiction to grant petitioner bond pursuant to In re Matter of Yajure Hurtado. (ECF No. 1 at 22-24.)  Petitioner also challenges his detention based on a violation of the Central District of California district court's Maldonado Bautista judgment as a member of the bond eligible Maldonado Bautista class.[4]  (Id. at 24.) Where the petition also alleges a violation of the INA, the Court declines to decide whether petitioner is entitled to relief based on his membership in the Maldonado Bautista class and focuses its analysis on the statutory violation claim.  See Herredia Gurrola v. Cruz, 2026 WL 494478, at *6 (E.D. Cal. Feb. 23, 2026) (declining to decide Maldonado Bautista claim and addressing statutory claim); see also De La Paz Salazar v. Noem, 2026 WL 496956, at *5 (E.D.

---

[4] See Maldonado Bautista v. Santacruz, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

Cal. Feb. 23, 2026) (noting that "the court in Maldonado Bautista explicitly clarified that it could not issue injunctive relief to class members ordering their immediate release or entitlement to a bond hearing").

8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).

The Court concludes that § 1226(a) applies to petitioner.  This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting the government's new interpretation[5] of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest

---

[5] Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondents' reliance on Buenrostro-Mendez, 166 F.4th 494, is unavailing. In Buenrostro-Mendez, the Fifth Circuit recently agreed with the government's interpretation of § 1225(b)(2). This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C.
> § 1225(b)(2)(A) applies to noncitizens who have lived in the United
> States for years without having been admitted. See Castañon-Nava

6

> v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)). Respondents cite to the Buenrostro-Mendez decision. Doc. 9 at 1. The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case."

Gurvinder Singh, 2026 WL 413839, at *1 n.1. This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above. See also Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same). In addition, as in Gurvinder Singh, petitioner raises a due process claim, which the court in Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the BIA's new interpretation of 8 U.S.C. § 1225(b)(2) and the contention that petitioner is an "applicant for admission" subject to § 1225(b)(2). This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has resided in this country for over 11 years and his arrest and detention in September or October 2025 was not upon his arrival to the United States. "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)). As such, petitioner should have been provided a bond hearing pursuant to 8 U.S.C. § 1226(a) and is entitled to relief on his statutory claim.

///

7

**B.      Due Process Claim (Claim Three)**

Petitioner argues that his ongoing detention violates due process because ICE deprived him of liberty without adequate procedural safeguards and without legitimate governmental justification.  (ECF No. 1 at 25.)  The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  Courts have found that noncitizens, like petitioner, who entered the United States without encountering immigration authorities or being paroled into the United States, retain a liberty interest in being free from imprisonment.  See Jose V.E. v. Warden, 2026 WL 785837, at *2 (E.D. Cal. Mar. 20, 2026) (petitioner who entered United States at an "unknown date" and "unknown time" had protected liberty interest in remaining free from imprisonment); Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158-60 (D. Nev. Nov. 17, 2025) (finding petitioners who entered without inspection and had resided continuously in the United States had protected liberty interest in freedom from imprisonment); Hernandez v. Noem, --- F. Supp. 3d ----, 2025 WL 3170872, at *7 (W.D. Mich. Nov. 13, 2025) (petitioner who entered without inspection in 1999 had protected liberty interest in freedom from imprisonment); but see Escobar v. Santacruz, 2026 WL 413592, at *3 n.3 (C.D. Cal. Feb. 10, 2026) (petitioner who entered without inspection and was never released on parole

or order of supervision does not have as strong of a liberty interest in remaining free from detention).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 11 years, petitioner was free from custody before his detention. The duration of petitioner's freedom prior to his detention elevates and underscores his interest in liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous

deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). As discussed above, the immigration judges conducting petitioner's bond hearings found that petitioner was subject to mandatory detention and did not consider whether petitioner was a flight risk or danger to the community. Respondents do not contend that petitioner is or was a flight risk or danger to the community. (See ECF No. 11.) Here, petitioner has been detained since September or October 2025 without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because respondents do not claim that petitioner is a flight risk or danger to the community. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing where the government must demonstrate that petitioner is a flight risk or danger to the community, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). Respondents point to no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due

10

process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is also entitled to relief on his due process claim.

### C.      Petitioner's Other Claim for Relief

In light of the Court's recommendation that petitioner's requested relief be granted on claims one and three (violation of 8 U.S.C. § 1226 and the Fifth Amendment Due Process Clause), petitioner's remaining habeas corpus claim (claim two, alleging violation of the APA) need not be resolved.

## V.      RESPONDENTS' REQUEST TO STAY

Respondents' alternative request that this matter be stayed pending a ruling by the Ninth Circuit in Rodriguez v. Bostock, No. 25-6842 (9th Cir.) should be denied because a stay is not in the interests of petitioner, who has been detained since September or October 25, 2025, and because a stay would not promote the efficient use of scarce judicial resources in a district with some of the highest caseloads in the country. A stay would put a further strain on limited judicial resources.

## VI.      RESPONDENTS' MOTION TO DISMISS

For the reasons set forth above, respondents' motion to dismiss should be denied.

## VII.      CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on two separate grounds: (1) petitioner's statutory claim and (2) petitioner's due process claim.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.   The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.   Respondents' motion to dismiss (ECF No. 11) be DENIED.

3.   Respondents be ordered to IMMEDIATELY release petitioner Miguel Chiguil Chiguil (A-242-441-617) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

4.   Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless

11

the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified. Petitioner shall be allowed to have his counsel present at any such hearing. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 3, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Chig1844.157.imm/2

12